# IN THE COURT OF APPEALS OF IOWA

No. 19-1876
Filed April 29, 2020

**IN THE INTEREST OF S.G., Y.G., L.P., and S.C.,**
**Minor Children,**

**K.C., Father of S.C.,**
    Appellant,

**T.G., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Monroe County, William Owens, Associate Juvenile Judge.

A mother and father appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**

Jonathan Willier, Centerville, for appellant father.

James R. Underwood of Underwood Law Office, Centerville, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Debra A. George of Griffing & George Law Firm, PLC, Centerville, for appellee intervenor.

Michael S. Fisher of Fisher Law Office, Oskaloosa, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and May and Schumacher, JJ.

**MAY, Judge.**

A mother appeals the termination of her parental rights to four children, S.G., Y.G., L.P., and S.C. The mother claims termination is not in the children's best interests, the juvenile court should have applied permissive factors to preclude termination, and she should be granted additional time to work toward reunification. S.C.'s father also appeals the termination of his parental rights to S.C.[1] He also claims termination is not in S.C.'s best interest and the juvenile court should have applied permissive factors to preclude termination. We affirm.

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

We generally use a three-step analysis to review the termination of parents' rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. Finally, we consider any additional arguments raised by the parents.

---

[1] The juvenile court terminated the parental rights of S.G. and Y.G.'s father and L.P.'s father. They do not appeal. So all subsequent references to the father refer only to S.C.'s father.

Typically we begin by determining whether the State established statutory grounds authorizing termination under Iowa Code section 232.116(1) (2019). *See id.* But both parents concede the State established statutory grounds for termination under section 232.116(1)(f). So we need not address this step. *See In re G.V.*, No. 20-0080, 2020 WL 1310261, at *1 (Iowa Ct. App. Mar. 18, 2020).

Our next step requires us to consider the best interests of the children. *See* Iowa Code § 232.116(2). We "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

Both parents claim the juvenile court erred in its best-interests findings. They argue the children would have been better served through establishment of a guardianship. We disagree.

Both parents claim establishment of a guardianship would allow them time to improve their parenting. Yet their history does not suggest they are on the road to becoming suitable parents. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citations omitted)). The father has had little contact with S.C. He has prioritized efforts to evade authorities over building a relationship with S.C. And he has

unresolved substance-abuse issues. The mother has prioritized her relationship with her current paramour over her children. And she also has unresolved substance-abuse issues.

Moreover, "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). By their very nature, guardianships can be modified or terminated. *See id.* at 477–478 (discussing the practical realities of guardianships). Placing the children in a guardianship would effectively suspend these children in a perpetual state of limbo.

Conversely, termination frees the children to find finality and stability through adoption. And their foster-care placement, the maternal grandmother, is willing to adopt the children. *See* Iowa Code § 232.116(2)(b).

These children need and deserve the permanency and security that cannot be found without termination. Their short- and long-range interests require termination of the mother's and the father's rights.

Next, both parents argue section 232.116(3)(a) and (e) should be applied to preclude termination of their respective parental rights. Section 232.116(3)(a) permits a juvenile court to preclude termination when "[a] relative has legal custody of the child." Here, the maternal grandmother has legal custody of the children. Section 232.116(3)(e) permits the court to preclude termination when "[t]he absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces." Both parents interpret "commitment to any institution" to include halfway houses—where both resided at the time of the termination hearing.

Section 232.116(3) exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). And the burden of establishing a section 232.116(3) exception rests with the parent contesting termination. *See A.S.*, 906 N.W.2d at 476. Here, neither parent presents a compelling argument as to why we should apply either exception to preclude termination. So we decline to apply section 232.116(3)(a) or (e) to either parent.

Finally, we address the mother's request for additional time to work toward reunification. The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). But the mother does not identify a "*specific*" improvement that would occur within six months. *See id.* (emphasis added). Moreover, given the length of time this case was open—and that the three oldest children were previously subjects of child-in-need-of-assistance proceedings—we see no reason to believe any lasting and material change would occur in six months' time.

The juvenile court was correct in terminating the mother and the father's respective parental rights.

**AFFIRMED ON BOTH APPEALS.**